IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
NO.: 5:12-CV-00544-D

| | |
|---|---|
| DEBORAH ELWOOD, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | **MEMORANDUM &** |
| ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant ) | |
| _____ ) | |

This matter is before the Court upon the parties' cross Motions for Judgment on the Pleadings. (DEs 23, 25). The time for filing any responses or replies has expired and the motions are now ripe for adjudication. Pursuant to 28 U.S.C. § 636(b)(1), they have been referred to the undersigned for the entry of a Memorandum and Recommendation. For the following reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE 23) be DENIED, that the Defendant's Motion for Judgment on the Pleadings (DE 25) be GRANTED and that the Commissioner's final decision be affirmed.

**I. STATEMENT OF THE CASE**

Plaintiff protectively filed an application for supplemental security income and disability insurance benefits on February 12, 2009, alleging a disability beginning on July 5, 2008. (Tr. 161–71). Her claim was denied initially and upon reconsideration. *Id*. at 75–89. A hearing was held before an Administrative Law Judge ("ALJ") via video-conference on October 14, 2010 and, in a decision dated November 9, 2010, the ALJ determined that Plaintiff was not disabled. *Id*. at 55–69. The Social Security Administration's Office of Disability Adjudication and Review

Appeals Council ("AC") denied Plaintiff's request for review on July 20, 2012, thus making the ALJ's decision the final decision in this matter. *Id*. at 1–6. Plaintiff appealed that decision to this Court on August 22, 2012. (DE 1-2).

## II. STANDARD OF REVIEW

This Court is authorized to review Defendant's denial of benefits under 42 U.S.C. § 405(g), which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . .

42 U.S.C. § 405(g).

"Under the Social Security Act, [the Court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). "In reviewing for substantial evidence, . . . [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute . . . [its] judgment for that of the Secretary." *Craig*, 76 F.3d at 589. Thus, this Court's review is limited to determining whether Defendant's finding that Plaintiff was not disabled is "supported by substantial evidence and whether the correct law was applied." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

## III. ANALYSIS

The Social Security Administration has promulgated the following regulations which establish a sequential evaluation process that must be followed to determine whether a claimant is entitled to disability benefits:

> The five step analysis begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work. 20 C.F.R. § 404.1520(f).

*Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001).

The ALJ followed the sequential evaluation in this case. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date, July 5, 2008. (Tr. 60). At step two, the ALJ found that Plaintiff had the following severe impairments: mild reflex sympathetic dystrophy syndrome/complex regional pain syndrome (RSD/CRPS) with left foot radiculopathy; asthma; chronic episodes of costochondritis; syncope; hypothyroidism; morbid obesity; and depression. (*Id*). However, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. at 62). Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with the following limitations: no climbing of ropes, ladders or scaffold at all, and no more than occasional climbing of ramps and stairs; occasional balancing, stooping, kneeling, crouching and

3

crawling; and no more than occasional exposure to temperature extremes, humidity, environmental irritants and workplace hazards (moving machinery, dangerous heights). (*Id*. at 64). The ALJ also determined that Plaintiff the ability to perform simple, routine, repetitive tasks on a regular and continuing basis. (*Id*). The ALJ found that Plaintiff was unable to perform any past relevant work. (*Id*. at 67). Considering Plaintiff's age, education, work history and RFC, the ALJ determined that there were a significant number of jobs in the national economy which Plaintiff was capable of performing. (*Id*. at 68). These include small parts assembler; final assembler; eyeglass frame inspector; and dowel inspector. (*Id*). Accordingly, the ALJ found that Plaintiff had not been under a disability during the relevant time period. (*Id.* at 69).

Plaintiff's contends presently that the ALJ's erred in assessing her credibility.

*A. Evidence before ALJ*

The undersigned has reviewed the entire record, the relevant parts of which shall now be summarized.

*1. Plaintiff's testimony*

At the time of the hearing, Plaintiff testified that she was 29 years old, she had graduated from high school and she was able to drive. (Tr. 19). Her past work was as a cashier and office worker at a grocery store from September, 2001 through June, 2008, when she was fired and put on probation for six (6) months. (*Id*. at 20). She testified that, although she was permitted to return to her position in February, 2009, she fell and hurt her ankle in July, 2008, precluding her from returning to work. (*Id*. at 22). She stated that the pain was "unbearable" and that she had to sit with her foot propped up. (*Id*). She also testified that the pain is not really relieved with her foot up, that the pain is still as bad, but not as bad as it is when she is walking. (*Id*. at 41).

4

Plaintiff testified that she was currently being treated by three physicians — Dr. Davis at Fayetteville Women's Care for depression; her main physican, Dr. Drager and his successor at Southern Regional AHEC, for medicals and referrals; and Dr. Desai at Cape Fear Pain Center for ankle and back pain. (*Id*. at 23–24). She testified that she wears an ankle brace, one that she purchased but that was not prescribed, to go to the store and in the wintertime because the pain is "extremely bad" if the ankle gets cold. (*Id*. at 26). She stated that she had injections for her pain, both a nerve block and epidurals. (*Id*. at 27).

Plaintiff further testified that she has pain in her lower back and her left ankle and that she is in pain everyday. (*Id*. at 28). Inasmuch as she exceeded the number of visits per year permitted by Medicaid, Plaintiff stated that she has been unable to see the pain specialist because she is unable to afford payment. (*Id*). Plaintiff testified that the pain is made worse by walking around a lot and that nothing relieves her pain. (*Id*. at 29). She did not use pain medication because, she alleged, it did not work. (*Id*. at 29).

As to how long she is able to sit, Plaintiff stated that sitting "kills [her] back" and that lying down does as well, and that she had to twist herself to get a minute or two of relief. (*Id*. at 29–30). She further stated that she is able to walk 10–15 minutes before she has to stop to get off her foot. (*Id*. at 30). She also stated she is unable to lift or carry, and that bending, squatting, kneeling, crouching and crawling "kill her back." (*Id*).

As to her mental health, Plaintiff testified that she is depressed, for which she takes medication, but that she does not see a therapist. (*Id*. at 31–32). She used to go to her room and cry but the medication helps her out well. (*Id*. at 33). Plaintiff testified that she watches television and that she is able to follow the story and characters of an hour-long show; that she

5

likes going to the store and having other people around her and talking to her, but that she has trust issues and tries to keep to herself. (*Id*. at 33–34). She also stated she has some problem with her memory, that it is not good if she is having a bad day, which occurs about four (4) times per month. (*Id*. at 34).

Plaintiff testified that she has asthma in the winter and develops bronchitis easily. (*Id*. at 35). She denied any problems with sleep or personal care. (*Id*). She states that she performs household chores, such as cooking, cleaning, vacuuming, laundry and shopping but that these activities take her a long time to complete. (*Id*. at 36). She further testified that she attends church on occasion, visits her sister and drives her son to school. (*Id*. at 37). She takes care of four (4) cats and two (2) dogs. (*Id*. at 38). Plaintiff testified that her typical day involves taking her son to school, watching television, doing some housework, picking her son up from school, sometimes going shopping, helping her son with homework, cooking dinner and doing the dishes. (*Id*. at 39).

Plaintiff stated that she was referred to a cardiologist because she was passing out, a problem she alleges to have had since childhood, which was attributed to dehydration or stress. She testified that she has such episodes at least once per month, actually losing consciousness for 30–60 seconds. (*Id*. at 42). Plaintiff further alleged having low energy levels. (*Id*. at 43). Finally, she stated that her symptoms, specifically her pain and her inability to get comfortable, prevent her from being able to do any job. (*Id*. at 43–44).

*2. Medical Evidence*

The parties do not dispute the medical evidence of record, which will be highlighted below.

In February, 2008, Plaintiff injured her left foot, but there were no fractures. (Tr. 308–10). In May, 2008, she was still experiencing sharp, stabbing pain in her left ankle. (*Id*. at 219–20). In July, 2008, her conditioned worsened as her left ankle gave out. She experienced an altered sensation in her smallest left toe and left ankle, severe pain and was unable to bear weight on that foot. (*Id*. at 332). An examination revealed tenderness, swelling and a decreased ROM. She was given a Toradol shot and prescribed pain medication. (*Id*. at 331–33).

An August 8, 2008 bone scan was positive for increased uptake in the radionuclide in the ankle and left foot, which may indicate reflex sympathetic dystrophy ("RSD"). (*Id*. at 229). There was also focal increased uptake in the tarsal bones of the left foot laterally. (*Id*). Plaintiff began pain management that month, which included Neurotin and lumbar sympathetic nerve blocks. (*Id*. at 244). Although she initially responded well to the sympathetic block, her pain returned. (*Id*. at 374). Given the presence of minimal allodynia, she was diagnosed with a mild form of CRPS in the left lower extremity. (*Id*. at 246).

A podiatric examination of the left foot in October, 2008 showed diminished sensation near the smallest toe; minimal tenderness over the plantar fascia; and mild pain with eversion, as well as full ROM and normal strength. (*Id*. at 233). She was diagnosed with plantar fasciitis, bilaterally; injury to the left foot an ankle with RSD/CRSP; and radiculopathy/neuritis in the left foot. (*Id*).

Plaintiff suffered another fall in October, 2008 but there was no edema and she reported

7

that she was not taking any medication for ankle pain. (*Id*. at 353). A nerve conduction study performed on October 23, 2008 was abnormal, consistent with a lesion of the S1 spinal nerve root on the left side. (*Id*. at 239–42). Her RSD diagnosis was continued and she was placed in a Cam walker boot in November, 2008. (*Id*. at 232).

In January, 2009, Plaintiff reported she was no longer taking Neurotin and an examination showed no allodynia or tenderness. (*Id*. at 372). Plaintiff received another lumbar sympathetic block on January 15, 2009, but it did not help her pain. (*Id*. at 372–77). She received a Ketamin infusion on February 24, 2009. (*Id*. at 376). Her diagnosis of CRPS/RSD was noted to be resistant to treatment. (*Id*. at 378). In May, 2009 Plaintiff was still experiencing tenderness upon palpitation, and also complained of left knee pain. (*Id*. at 411–14). An examination revealed some pre-tibial tenderness but no decrease in the ROM and no crepitus. (*Id*). The pain in her back and left knee continued, and Plaintiff began experiencing locking in her knee, which caused instability. (*Id*. at 420–23). A July 29, 2009 MRI showed small joint effusion ans diffuse mild cartilage loss. (*Id*. at 426).

Plaintiff received treatment from the Fayetteville Pain Center ("FPC") for left ankle pain which, she complained, worsened with prolonged sitting and standing. (*Id*. at 460–62). An examination noted abnormal gait and left sided limp; reduced left ankle strength and ROM; reduced ROM in lower back and pain in palpitation of paraspinal muscles; and spasms in her back. (*Id*). It was recommended that she wake frequent rest breaks to alleviate her pain. (*Id*. at 544–47).

Plaintiff continued to receive treatment from FPC from October, 2009–May, 2010 as she

8

continued to experience left ankle and foot pain as well as back pain. (*Id*. at 604–22). She had reduced strength and ROM as well as pain in the left ankle; limited ROM with extension and flexation of the back; and pain with left knee ROM. (*Id*). Tenderness upon palpitation was noted in the left ankle and left lumbar paraspinals and spasms were observed and she had a positive straight leg raise test on the left side for lumbar nerve root involvement. (*Id*).

Plaintiff received an epidural steroid injection ("ESI") in her lumbar spine in October, 2009 for her radicular leg pain. (*Id*. at 681). Inasmuch as she continued to suffer from leg pain and instability, physical therapy was recommended. (*Id*. at 590–98). The initial examination diagnosed left knee pain and chondromalacia patella. (*Id*. at 562). She had PT from December 2009–January, 2010. She received another ESI for radicular syndrome on January 5, 2010. (*Id*. at 680). A January, 2010 follow-up noted marked improvement in knee pain after PT with some residual weakness, which was attributed more to her ankle than her knee. (*Id*. at 548–49). She was instructed to use her knee brace for prolonged walking. (*Id*).

Plaintiff was diagnosed with hypothyroidism and a goiter in her throat, confirmed by an ultrasound which revealed an enlarged thyroid gland. (*Id*. at 352). She also suffered from recurrent respiratory issues. In December, 2008, she developed costochondritis and, despite the use of Albuterol, did not experience relief. She was prescribed Prednisone. (*Id*. at 361–64). She visited the ER in February, 2009 due to chest pain with costochondritis (*id*. at 517) and, in April, 2009, she suffered from bronchitis. (*Id*. at 408–10).

A psychological consult was performed in September, 2009. (*Id*. at 436–39). Although she experienced depression, she found that medication had improved her condition. (*Id*). The examination found that Plaintiff had the ability to understand, retain and follow simple

9

instructions; the ability to sustain attention well enough to perform simple, repetitive tasks; the ability to relate with fellow workers and supervisors in most work settings; and the ability to tolerate stresses and pressures associated with similar past work activity. (*Id*). The majority of her difficulty was attributed to her physical condition, not her mental status. (*Id*). Plaintiff also had a cardiology consultation and tests to determine the cause of her syncope spells, which were determined to be non-cardiac in nature. (*Id*. at 660–74).

     *B. Credibility*

     Plaintiff challenges the credibility afforded to her testimony by the ALJ. Specifically, she claims that the ALJ's decision is internally inconsistent because it found that Plaintiff was credible yet it did not include the limitations to which Plaintiff testified in formulating the RFC. She contends that the ALJ erred by not including a provision that Plaintiff be permitted to elevate her leg in the RFC determination.

     "Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). The regulations provide a two-step process for evaluating a claimant's subjective complaints of pain or other symptoms. 20 C.F.R. § 404.1529; *Craig*, 76 F.3d at 593-96. First, the ALJ must determine whether there is objective medical evidence showing the existence of a medical impairment that could be reasonably expected to produce the pain or alleged symptoms. 20 C.F.R. § 404.1529(b); *Craig*, 76 F.3d at 594. Second, the ALJ evaluates the intensity and persistence of the symptoms to determine how they limit the capacity for work. 20 C.F.R. 404.1529(c); *Craig*, 76 F.3d at 595. The ALJ evaluates the intensity and persistence of the symptoms and the extent to which they limit a

10

claimant's capacity for work in light of all the available evidence, including the objective medical evidence. 20 C.F.R. 404.1529(c).

At the second step, however, claims of disabling symptoms may not be rejected solely because the available objective evidence does not substantiate the claimant's statements as to the severity and persistence of the symptoms. *See Craig*, 76 F.3d at 595. Since symptoms can sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, all other information about symptoms, including statements of the claimant, must be carefully considered in the second part of the evaluation. 20 C.F.R. 404.1529(c)(2). The extent to which a claimant's statements about symptoms can be relied upon as probative evidence in determining whether the claimant is disabled depends on the credibility of the statements. SSR 96-7p, 1996 WL 374186, at *4. Ultimately, the ALJ's findings with regard to a claimant's credibility must "contain specific reasons . . . supported by evidence in the case record." *Id*. at *2. Further, Social Security Ruling 96-7 provides:

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7, 61 Fed. Reg. 34483-01.

In this matter, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (*Id*. at 65). Thus, the Plaintiff satisfied the first factor of the two-part inquiry as to credibility. The ALJ noted that the symptoms, *to wit.*,

11

her slow gait at her initial field office interview; the need to elevate her leg during the hearing, the numerous medication with which she was treated; the past use of a Cam walker boot; having received two lumbar sympathetic blocks and three lumbar epidural injections between September, 2008 and January, 2010; a February, 2009 Ketamine infusion; physical therapy; and the use of an ankle brace outside the home, did not allow her to perform more than a limited range of sedentary work. (*Id*). The ALJ further determined that "[t]he evidence of record concerning the medically determinable impairments, however, does not fully support the functional limitation ascribed to them by the [Plaintiff]." (*Id*). Thus, Plaintiff has not met the second factor of the two-part credibility inquiry. In sum, while acknowledging Plaintiff's impairments could cause the symptoms she alleged, the ALJ concluded that these symptoms were not as disabling as Plaintiff contended nor did they preclude her from performing a limited range of sedentary work.

Moreover, there is substantial evidence to support the ALJ's findings that do not include a leg elevation restriction in the RFC. For example, the ALJ noted that:

> the claimant did not exhibit a decrease in ankle joint dorsiflexion or muscle strength during the four visits to Dr. Eaton. (Ex. 2F: 1-5). Dr. Gootman did not observe any allodynia or significant tenderness in the lower extremities in January 2009, . . . These unremarkable objective findings do not appear out of the ordinary, considering that the claimant did not report anything more than an inability to spend "significant periods of time" on her feet at that time. (Ex. 5F:3). In fact, the initial disability report asserted one month later that the left foot pain did not limit her ability to stand up to two hours at a time. (Ex. 2E:2).

(*Id*. at 66). The ALJ also found that Plaintiff walked with a normal gait in May, 2009; she took only over-the-counter pain medication in July, 2009 to address her back, knee and ankle pain; following a month of physical therapy, she walked with a normal gait with no assistive device in February, 2010; and her pain did not disrupt her sleep. (*Id*. at 67).

Additionally, Plaintiff's own testimony indicated that elevating her foot did not really relieve the pain. (*Id*. at 41). Further, although Plaintiff testimony and the medical records reflect her complaints of pain, her reports of performing several activities of daily living such as driving her son to school; preparing family meals; grocery shopping; helping her mother get around; and giving her son a bath, are inconsistent with the significant loss of functioning she claims. (*Id*).

Accordingly, the ALJ properly assessed Plaintiff's credibility regarding the limiting effects of her pain and there is substantial evidence to support that determination. Nor is there any internal inconsistency in the decision. Thus, Plaintiff's argument on this issue is without merit.

## IV. CONCLUSION

For the aforementioned reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE 21) be DENIED, that Defendant's Motion for Judgment on the Pleadings (DE 25) be GRANTED, and that the decision be affirmed.

SO RECOMMENDED in Chambers at Raleigh, North Carolina on Lcpwct{"43."4236.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE